**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TOM HUBERTUS GIERLICHS**<br>**Marthashof 12**<br>**10435 Berlin**<br>**Germany**<br><br>**Petitioner,**<br><br>**v.**<br><br>**JESSICA ANNE GIERLICHS[1]**<br>**Office of the Secretary of State**<br>**16 Francis Street**<br>**Annapolis, Maryland 21401**<br><br>**Respondent.** | * * * * * * * * * | **Civil No.:** |

* * * * * * * * * * * * *

**<u>VERIFIED PETITION FOR RETURN OF CHILDREN TO GERMANY & FOR ISSUANCE OF SHOW CAUSE ORDER</u>**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

Petitioner, Tom Hubertus Gierlichs, by and through his undersigned attorneys, files this Verified Petition for Return of Children to Germany & for Issuance of Show Cause Order (the "Petition"), against the Respondent, Jessica Anne Gierlichs.

## I. INTRODUCTION

1. Petitioner, Tom Hubertus Gierlichs ("Father") and Respondent, Jessica Anne Gierlichs ("Mother") are the parents of three children: CG (female, age 10, born in 2016), IG (female, age 8, born in 2018), SG (female, age 5, born in 2020) (collectively, the "children").

[1] Upon information and belief, Mother is enrolled as a participant in Maryland's Address Confidentiality Program. Md. Code Ann. State Govt. § 7-301, *et seq*.

2. This Petition is filed as a result of Mother's wrongful removal of the children from their habitual residence of Germany to the United States. The wrongful removal occurred on or about June 5, 2023. Father has been searching for the children, and attempting to have them returned to Germany for more than three years. The children have finally been located in the District of Maryland.

3. Father filed a Verified Petition for Return in the United States District Court for the Eastern District of Texas (the "Texas Court") on March 16, 2024 (the "Texas Hague Case"). The Case Number is: 6:24-cv-000098. In his petition in the Texas Hague Case, Father alleged that he believed the children were located in Lindale, Texas at the time he filed the petition.

4. Despite repeated efforts by Father, and the Texas Court's authorization for alternative service, no direct contact was made with Mother after Father filed his petition in the Texas Court.

5. On November 19, 2025, Father moved for a default judgment against Mother. The Texas Court entered the default judgment and return order in favor of Father on March 30, 2026.

6. On July 23, 2026, the Texas Court issued a Warrant of Arrest against Mother.

7. Mother then made her appearance in the Texas Case on July 31, 2026 and moved, *inter alia*, to vacate the default judgment and return order, and to stay enforcement of the return order and execution of the warrant.

8. Mother is represented by counsel from Cleary Gottlieb Steen & Hamilton in the Texas Hague Case, as well as by local counsel from Gray Reed & McGraw LLP. In Mother's papers filed in the Texas Hague Case, she confirmed under oath that the children are located in the District of Maryland.

9. The Texas Court entered an Order on August 1, 2026 staying the effect of the final judgment and all outstanding arrest warrants. In the same Order, the Texas Court ordered Mother not to remove the children from the District of Maryland until further order of the Court.

10. The U.S. Marshals Service for the District of Maryland was made aware of the Texas Court's Order and was provided with a copy of the Texas Court's Order prohibiting the removal of the children from the District of Maryland.

11. On September 2, 2026, after briefing submitted by both parties through their respective counsel, the Texas Court vacated the default judgment and return order and dismissed Father's petition without prejudice.

12. Father therefore immediately files this Petition in this Court and requests that a Hague Convention provisional remedies order be entered that prohibits Mother from removing the children from the District of Maryland until further order of the Court.

## II. JURISDICTION

13. This Court has jurisdiction under ICARA § 9003 because this case involves the removal of children under the age of 16 from their habitual residence of Germany to the United States.

14. The children are currently located within the jurisdiction of this Court in the District of Maryland.

15. Congress has specifically granted concurrent original jurisdiction to the federal courts of actions arising under the Hague Convention. ICARA § 9003.

## II. FACTS

16. The parties were married on October 5, 2012 in Berlin, Germany and lived together in Germany thereafter.

17. The parties' children, CG (female, age 10, born in 2016), IG (female, age 8, born in 2018), and SG (female, age 5, born in 2020) were each born in Berlin, Germany.

18. The parties and children all lived in Germany since each of the children's respective births until Mother removed the children from Germany on or about June 5, 2023.

19. Germany has always been the children's ordinary home and holds a degree of settled purpose from the children's perspective.

20. The children had always been fully involved and integrated in all aspects of daily and cultural life in Germany. The children have deep roots in the community in Germany.

21. The children have friends and extended family in Germany.

22. The children received routine medical care and dental care in Germany until Mother removed the children to the United States.

23. The children attended school and daycare in Germany until Mother removed the children to the United States.

24. The children participated in extracurricular activities, playdates, and cultural activities in Germany until Mother removed the children to the United States.

25. The German court system was seised with jurisdiction over and was involved with and assisting the family in Germany at the time Mother removed the children to the United States.

26. In June 2022, Mother filed an application for a restraining order against Father in the German Court. She alleged Father had committed physical and sexual abuse of the children. Based on Mother's allegations, during the pendency of the German proceeding, the German Court initially ordered certain safety measures for the children during Father's periods of parenting time with the children. The German Court also ordered an assessment of the children by a child protection agency to determine the veracity of Mother's allegations.

27. In October 2022, the child protection agency concluded that there were no reliable indications of any sexual violence committed by Father. The German Court then ordered the parties to submit to a psychological expert assessment of the parties' parenting skills and directed the parties to take the oldest child CG for psychological testing and outpatient psychotherapy. The German Court had also appointed a guardian ad litem for the children.

28. On May 5, 2023, the guardian ad litem advised the German Court that the guardian had serious concerns with respect to the children's welfare because Mother had not been cooperating with the German legal process and because the court-ordered investigation into Mother's claims of abuse had not been completed. Based on the guardian ad litem's concerns for the welfare of the children, she recommended to the German Court that it consider placement of the children with a third-party, as a possible alternative to either of the parents, during the pendency of the German proceeding.

29. The German Court held a status conference on June 12, 2023 at which the parties and children were to appear in-person. Father appeared as ordered. Mother and the children did not appear.

30. Father then learned that Mother had withdrawn the children from school and daycare in Germany and had stated that she would disappear with the children.

31. On June 13, 2026, Father made a report to German law enforcement relating to Mother's abduction of the children. German law enforcement was unable to locate Mother and children.

32. Despite having failed to appear in the German Court on June 12, 2026 and having removed the children (which Father later learned had occurred on or about June 5, 2023) Mother continued to participate in the German proceedings through her German counsel of record.

33. On June 20, 2023, the German Court removed both parties as custodians of the children and appointed the Pankow Youth Welfare Office as the guardian of the children.

34. Both parties appealed the German Court's order. In the German appellate proceedings, each party made affirmative requests for relief relating to custody of the children.

35. On September 8, 2023, the German appellate court granted Father's requests for relief and awarded Father the exclusive right to establish the children's residence.

36. Father has requested the return of the children to Germany on or about February 6, 2024 by submitting his Application for Return to the German Central Authority.

37. Next, Father filed his Texas Hague Case in the Texas Court. *See* ¶ 3 *supra*. The Case Number is: 6:24-cv-000098. In his petition in the Texas Hague Case, Father alleged that he believed the children were located in Lindale, Texas at the time he filed the petition.

38. Despite repeated efforts by Father and the Texas Court's authorization for alternative service, no direct contact was made with Mother after Father filed his petition in the Texas Court.

39. On November 19, 2025, Father moved for a default judgment against Mother. The Texas Court entered a default judgment and return order in favor of Father on March 30, 2026.

40. On July 23, 2026, the Texas Court issued a Warrant of Arrest against Mother.

41. Mother then made her appearance in the Texas Case on July 31, 2026 and moved, *inter alia*, to vacate the default judgment and return order, and to stay enforcement of the return order and execution of the warrant.

42. Mother is represented by counsel from Cleary Gottlieb Steen & Hamilton in the Texas Hague Case, as well as by local counsel from Gray Reed & McGraw LLP. In Mother's

papers filed in the Texas Hague Case, she confirmed under oath that the children are located in the District of Maryland.

43. In her filings in the Texas Court (Doc. Nos. 35, 37), Mother also has made certain specific undertakings in support of the relief she requested, including, in summary:

A. Mother will not relocate the children outside the District of Maryland without prior request to the Texas Court and Father's counsel;

B. Mother will surrender to the Texas Court the children's passports;

C. Mother will appear in person before the Texas Court at the court's earliest convenience;

D. Mother will ensure the children remain enrolled in their current schools; and

E. Mother will facilitate immediate video visits between Father and the children.

44. The Texas Court entered an Order on August 1, 2026 staying the effect of the final judgment and all outstanding arrest warrants. In the same Order, the Texas Court ordered Mother not to remove the children from the District of Maryland until further order of the Court.

45. The U.S. Marshals Service for the District of Maryland was made aware of the Texas Court's Order and provided a copy of the Texas Court's Order prohibiting the removal of the children from the District of Maryland.

46. On September 2, 2026, after briefing submitted by both parties through their respective counsel, the Texas Court vacated the default judgment and return order and dismissed Father's petition without prejudice.

47. Father therefore immediately files this Petition in this Court.

## IV. COUNT I – WRONGFUL REMOVAL

48. Father restates and re-alleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

49. The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody under the law of the child's habitual residence, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

50. All three children are under the age of 16.

51. The children's habitual residence is Germany and was Germany on the date Mother removed the children from Germany to the United States.

52. From the totality of the circumstances, as of the date of removal on or about June 5, 203, Germany was the children's home and habitual residence.

53. The parties and children all lived in Germany since each of the children's respective births until Mother removed the children from Germany on or about June 5, 2023.

54. Germany has always been the children's ordinary home and holds a degree of settled purpose from the children's perspective.

55. The children had always been fully involved and integrated in all aspects of daily and cultural life in Germany. The children have deep roots in the community in Germany.

56. The children have friends and extended family in Germany.

57. The children received routine medical care and dental care in Germany until Mother removed the children to the United States.

58. The children attended school and daycare in Germany until Mother removed the children to the United States.

59. The children participated in extracurricular activities, playdates, and cultural activities in Germany until Mother removed the children to the United States.

60. The German court system was seised with jurisdiction over and was involved with and assisting the family in Germany at the time Mother removed the children to the United States. *See* ¶¶ 25-35 *supra*.

61. At the time the Mother removed the children from Germany to the United States, Father had (and continues to have) rights of custody to the children under German law.

62. The German Civil Code applies in Germany and addresses parents' rights of custody to their children under German law.

63. Under Section 1626(1) of the German Civil Code, a child's parents both have, by operation of law, "the duty and the right to care for the minor child (parental custody)."

64. Father therefore has parental custody of the children in accordance with the German Civil Code. He has this right by operation of law, and he had this right jointly with Mother at the time Mother removed the children from Germany on or about June 5, 2023.

65. Section 1626(1) of the German Civil Code defines "parental custody" to include "the care for the person of the child (care for the person of the child) and the assets of the child (care for the assets of the child)."

66. Section 1631(1) of the German Civil Code further provides that "the care for the person of the child includes in particular the duty and the right to care for, bring up and supervise the child and to specify its abode."

67. The rights and responsibilities of a person entitled to parental custody under German law necessarily involve the "care of the child."

68. Section 1627 of the German Civil Code provides that when parents have joint parental custody of a child, "[t]he parents are to exercise the parental custody on their own responsibility and in mutual agreement for the best interests of the child. In the case of differences

of opinion, they must make efforts to achieve agreement." Joint parental custody is therefore a right of custody under German law and under Article 5*a* of the Hague Convention. Accordingly, neither parent with joint parental custody may retain a child from Germany without the other parent's agreement.

69. Mother's removal of the children from Germany to the United States therefore breached Father's *ex lege* German Civil Code rights of custody to the children under German law.

70. Father has never consented to Mother's removal of the children from Germany.

71. Father has never acquiesced to Mother's removal of the children from Germany.

72. Mother's removal of the children from Germany is therefore in breach of the Father's Hague Convention article 5*a* rights of custody.

73. Notice is given in this pleading that Father is relying upon foreign law. FED. R. CIV. P. 44.1.

74. At the time Mother removed the children from Germany, Father was exercising his rights of custody within the meaning of Articles 3 and 5*a* of the Convention by fully participating in all aspects of the children's lives.

75. Mother's removal of the children from Germany is therefore wrongful under the Hague Convention because Mother has removed the children from their habitual residence of Germany, in breach of Father's rights of custody to the children under German law, which Father was exercising at the time of the removal.

76. The children are not well-settled in Maryland. Upon information and belief, the children have not developed a stable, permanent, and nontransitory life in the United States to such a degree that return to their habitual residence of Germany would be to their detriment.

77. Upon information and belief, Mother has taken steps to conceal the children's location from Father and from the German Court.

78. Mother alleged in her filings in the Texas Hague Case that she disabled or deleted her email accounts and social media accounts at or around the date she removed the children from Germany.

79. Mother has completely cut off all contact between the children and Father since she wrongfully removed the children from Germany on or about June 5, 2023.

80. Mother alleged in her filings in the Texas Hague Case that the children currently attend school in Maryland. Father has no direct objective information with respect to the children's school attendance, participation in religious activities, participation in community or extracurricular activities, or relationships with friends and relatives from the date Mother removed the children from Germany on or about June 5, 2023.

81. Father has requested the return of the children to Germany on or about February 6, 2024 by submitting his Application for Return to the German Central Authority.

82. Father then pursued his Texas Hague Case seeking return of the children to Germany, which was dismissed without prejudice September 2, 2026 because the children are physically located in the District of Maryland. *See* ¶¶ 37-45 *supra*.

83. The children are currently physically located within the District of Maryland with Mother at her home, which address is, upon information and belief, confidential under Maryland Address Confidentiality Program.

## V. COUNT II – ARTICLE 18 RETURN

84. Father restates and re-alleges the allegations contained in Paragraphs 1 through 83 as if fully set forth herein.

85. Father invokes Article 18 of the Convention, which grants this Court plenary power to order the children's return at any time.

## VI. PROVISIONAL AND EMERGENCY REMEDIES[2]

86. Father restates and re-alleges the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

87. The Hague Convention sets forth the need for expedited action and contemplates a six-week aspirational goal for final determination of this case. Convention, art. 11.

88. Father requests that the Court issue forthwith a *Ne Exeat* & Show Cause Order forthwith ordering (A) the appearance of the Mother before this Court on the first available date on the Court's calendar; (B) that Mother submit the children's passports to the United States Marshals Service upon service of process on Mother; and (C) prohibiting Mother from removing the children from the District of Maryland to mirror the Order previously entered by the Texas Court; and (D) directing the *Ne Exeat* & Show Cause Order to be served on the Mother forthwith as follows: (i) in person by the United States Marshals Service (which upon information and belief, is able to obtain or already has obtained Mother's confidential address); (ii) by mail on the Maryland Secretary of State; and (iii) by e-mail on Mother's counsel of record in the Texas Hague Case.

89. Father further requests that in-person contact be ordered for the children with Father to begin immediately following the Show Cause Hearing.

[2] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." ICARA § 9004.

90. Unless this Court takes expedited action to issue the *Ne Exeat* & Show Cause Order requested by Father, irreparable harm will occur to the well-being of the children in that (A) they will continue to be deprived of their Father and their home in Germany; and (B) the children are at risk of Mother relocating the children yet again based upon the Texas Hague Case having been dismissed and the Texas Court's Order prohibiting removal of the children from this District thereby no longer remaining in effect.

91. Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction … may … order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004. In this case, the law referred to is that of the State of Maryland.

92. In the State of Maryland, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as the Family Law Article of the Annotated Code of Maryland at Section 9.5-101 *et seq*.

93. Maryland law addresses the appearance of the parties and the child in Section 9.5-210 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians together and authorizes the court to "enter any orders necessary to ensure the safety of the child . . ." *Id.*

94. This Court therefore has the authority to issue its show cause order, ordering the appearance of Mother and the children in that the provisions of 22 U.S.C. § 9004 have been met.

95. This Court has the authority to order contact between Father and the children during the pendency of this proceeding in accordance with 22 U.S.C. § 9004(a). *See Aubert v. Poast,* 166 F.4th 654, 656 (7th Cir. 2026).

## VII. UCCJEA DECLARATION

96. The details regarding the children that are required to be provided under the UCCJEA are as follows:

A. The children are currently located with the Mother within the jurisdiction of this Court. Upon information and belief, Mother is enrolled in Maryland's Address Confidentiality Program. Md. Code Ann. State Govt. § 7-301, *et seq*.

B. From the date Mother wrongfully removed the children from Germany on or about June 5, 2023 until present, the children have been physically located with Mother in the United States. Mother has represented in her filings in the Texas Court that after she removed the children from Germany, she and the children first stayed in West Virginia and then later came to Maryland where they are now currently located.

C. From each of the children's respective births until the date Mother wrongfully removed the children from Germany on or about June 5, 2023, the children lived in Germany with both parents.

D. Father does not have information of any custody proceeding concerning the children pending in any other court of this or any other State, except as set forth in this Petition.

E. Father does not know of any person or institution not a party to the proceedings that has physical custody of the children or claims to have guardianship and parental responsibility, or legal custody or physical custody of, or visitation or parenting time with the children.

## VIII. NOTICE OF HEARING

97. Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with the Maryland UCCJEA and all applicable Federal Rules.

## IX. ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

98. Father has incurred, and will continue to incur, reasonable and necessary attorneys' fees, expenses and costs because of Mother's wrongful removal of the children. Father respectfully requests that this Court award her all of her reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing of a separate motion for reasonable and necessary expenses and costs in accordance with ICARA, the Federal Rules, and this Court's Local Rules.

**WHEREFORE**, Father respectfully requests the following relief:

A. That this Verified Petition for Return of Children to Germany be GRANTED;

B. That this Court issue forthwith a *Ne Exeat* & Show Cause Order, in the form submitted herewith ordering (A) the appearance of the Mother before this Court on the first available date on the Court's calendar; (B) that Mother submit the children's passports to the United States Marshals Service upon service of process on Mother; and (C) prohibiting Mother from removing the children from the District of Maryland;

C. That this Court's *Ne Exeat* & Show Cause Order be served upon Mother forthwith as follows: (i) in person by the United States Marshals Service (which upon information and belief, is able to obtain or already has obtained Mother's confidential address); (ii) by mail on the Maryland Secretary of State; and (iii) by e-mail on Mother's counsel of record in the Texas Hague Case;

D. That this Court issue an Order directing Mother to pay Father's reasonable and necessary attorneys' fees and expenses, including but not limited to suit money, expenses, and costs; and

E. That this Court grant any such further relief as justice and Father's cause may require.

**VERIFICATION**

PURSUANT TO 28 U.S.C.A. §1746, I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON 9/3/2026.

Signiert von:
Tom Hubertus Gierlichs
E45203B765F1483...

Tom Hubertus Gierlichs
*Petitioner*

/s/ Kelly A. Powers
Stephen J. Cullen, Bar No. 11838
Kelly A. Powers, Bar No. 28567
Katherine E. Coyle, Bar No. 31419
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3621
(410) 773-9100 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com
kcoyle@milesstockbridge.com

/s/ James A. Sullivan, Jr
James A. Sullivan, Jr., Bar No. 13519
Joel R. Zuckerman, Bar No. 12730
Kelly A. Robier, Bar No. 30938
Miles & Stockbridge P.C.
915 Meeting Street, Suite 1110
North Bethesda, Maryland 20852
(301) 517-4824
(301) 841-7984 (fax)
jsulliva@milesstockbridge.com
jzuckerman@milesstockbridge.com
krobier@milesstockbridge.com

*Attorneys for Petitioner, Tom Hubertus Gierlichs*